IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| STEPHEN P. SHANKS, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:20-CV-05047-WJE |
| | ) | |
| ANDREW M. SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

Plaintiff Stephen P. Shanks seeks judicial review[1] of a final administrative decision of the Commissioner of Social Security ("Commissioner") denying his claim for supplemental security income ("SSI") under Title XVI of the Social Security Act ("SSA"), 42 U.S.C. §§ 1382–1385.[2] The Administrative Law Judge ("ALJ") found that although Mr. Shanks had several severe impairments, he retained the residual functional capacity ("RFC") to do limited light work as a sub-assembler of electrical equipment, storage facility rental clerk, and marker. After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. Thus, the Commissioner's decision is AFFIRMED.

## I. Background

On May 4, 2018,[3] Mr. Shanks protectively filed a claim for SSI, alleging a disability onset date of December 1, 2016, due primarily to "[c]hronic pain in both knees; [c]hronic pain in upper

---

[1] With the consent of the parties, this case was assigned to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).
[2] Mr. Shanks also filed a claim for disability insurance benefits under Title II of the SSA, 42 U.S.C. §§ 401-434, which the Commissioner initially denied. (AR 78-81, 163-64). Mr. Shanks requested a hearing before the ALJ on the Title II claim as well, however, at the April 18, 2019 hearing, Counsel for Mr. Shanks moved to amend the alleged onset date to a date after Mr. Shanks's last insured date "based on lack of evidence prior to that date last insured." (*See* AR 12, 32, 89-90). Counsel for Mr. Shanks recognized that such an amendment would "essentially withdraw[] the application for the disability insurance benefit claim." (AR 32). The ALJ granted the request, amended the alleged onset date, and dismissed the Title II disability insurance claim. (AR 12, 32). Mr. Shanks raised only his Title XVI claim in his Complaint (Doc. 3), but discussed his Title II claim in his Social Security brief (Doc. 12). Because Mr. Shanks withdrew his Title II claim and the ALJ did not address Mr. Shanks's Title II claim, the Court addresses only Mr. Shanks's Title XVI claim. *See* 42 U.S.C. §§ 405, 1383(c)(3).
[3] The Court notes that the ALJ's written decision states that Mr. Shanks protectively filed his application for SSI on May 3, 2018. (AR 12). However, the Application Summary for Supplemental Security Income contained in the Administrative Record states that Mr. Shanks applied for SSI on May 4, 2018. (AR 168). Mr. Shanks did not raise the incorrect date in his Social Security brief and the date on which Mr. Shanks protectively filed his application does

back; [c]hronic pain in arms and shoulders; [o]steoarthritis; [h]igh blood pressure; [and] concentration problems." (AR 83, 168-173). The Commissioner denied Mr. Shanks's claim at the initial claim level, and Mr. Shanks appealed the denial to an ALJ. (AR 83-87, 89-90). On April 18, 2019, the ALJ held a hearing, during which Mr. Shanks, through his counsel, requested to amend his alleged onset date to the date on which Mr. Shanks protectively filed his application for benefits. (AR 27, 32). Mr. Shanks's counsel stated that since the time Mr. Shanks protectively filed his application for benefits, he had been diagnosed with "osteoarthritis affecting both knees, degenerative disc disease affecting the lumbar spine and the cervical spine, where the cervical spine has caused ongoing headaches and migraines." (AR 32). The ALJ granted Mr. Shanks's request and amended the alleged onset date. (AR 12, 32).

On May 28, 2019, the ALJ denied Mr. Shanks's claim for SSI in a written decision. (AR 9-20). The ALJ determined that although Mr. Shanks had severe impairments, none of them met or exceeded a listed impairment. (AR 14-15). He also determined Mr. Shanks had an RFC to perform light work with certain limitations, including:

> ability to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for 20 minutes at a time and 4 hours in an 8-hour workday, sit for 20 minutes at a time and 4 hours in an 8 hour workday and occasional limitations in push and/or pull, as shown for lift and/or carry. The claimant can occasionally perform bilateral reaching overhead.

(AR 15).

Following the ALJ's unfavorable opinion, Mr. Shanks requested a review by the Appeals Council. (AR 160-62). The Appeals Council denied Mr. Shanks's request for review, leaving the ALJ's decision as the Commissioner's final decision. (AR 1-6). Because Mr. Shanks has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. § 1383(c)(3).

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the SSA in 42 U.S.C. § 1382c(a) rests on the claimant. *Dols v. Saul*, 931 F.3d 741, 746 (8th Cir. 2019) (citation omitted); *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (citation omitted). The Social Security Administration has

---

not affect the Court's analysis in the instant case. The Court will use May 4, 2018, the date listed on the Application Summary for Supplemental Security Income, as the filing date for the purposes of this order.

established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R § 416.920; *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).

As a part of this process, at step one, "the ALJ decides whether the claimant is currently engaging in substantial gainful activity." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (citation omitted). At step two, "the ALJ determines whether the claimant is suffering from a severe impairment." *Id.* (citation omitted). At step three, "the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in Appendix 1 of the regulations." *Id.* (citation omitted). At step four, "the ALJ determines whether the claimant retains the [RFC] . . . to perform his or her past relevant work." *Id.* (citation omitted). Finally, at step five, the ALJ "considers whether there exist work opportunities in the national economy that the claimant can perform given his or her medical impairments, age, education, past work experience, and RFC." *Id.* at 1091-92 (citation omitted).

### III. Standard of Review

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (citation omitted). "Substantial evidence" is less than "a preponderance of the evidence," merely requiring that a reasonable person would find the evidence adequate to support the Commissioner's decision. *Id.* (citation omitted); *Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019) (noting the substantial evidence standard of review "defers to the presiding ALJ, who has seen the hearing up close"). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

### IV. Discussion

Mr. Shanks raises two issues in his appeal before the Court. First, Mr. Shanks contends that the ALJ failed to support the RFC with substantial evidence. Specifically, Mr. Shanks states that the ALJ dismissed the opinions of the consultative examiner and state agency consultant, as well as Mr. Shanks's testimony, and that after the ALJ did so, he failed to support the RFC with a

narrative discussion. Second, Mr. Shanks asserts that the ALJ improperly discredited Mr. Shanks's subjective reports. The Court considers each argument but will address Mr. Shanks's argument regarding his subjective reports first. It will then turn to Mr. Shanks's contention that the RFC is not supported by substantial evidence. The Court will affirm on both grounds.

> A. *Substantial Evidence Supports the ALJ's Credibility Decision Regarding Mr. Shanks's Subjective Reports*

Mr. Shanks asserts that the ALJ failed to properly consider his subjective reports regarding his impairments. He argues that the ALJ "relied on a conclusory statement without support from the record and did not address factors that bolstered the truth of [Mr.] Shanks's subjective reports." (Doc. 12 at 12). Here, the ALJ properly considered the evidence as a whole, provided good reasons for his credibility determination, and substantial evidence supports that determination. Therefore, the Court will affirm the ALJ's decision on this basis.

When determining a claimant's RFC, the ALJ considers multiple factors including medical evidence, nonmedical evidence, and the claimant's subjective reports concerning his or her symptoms and limitations. *See* 20 C.F.R. § 416.945(a)(3); *Perks*, 687 F.3d at 1092 (citation omitted).

> When evaluating the claimant's subjective complaints, the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984): (i) the claimant's daily activities; (ii) the duration, frequency, and intensity of the claimant's pain; (iii) precipitating and aggravating factors; (iv) the dosage, effectiveness, and side effects of medication; and (v) the claimant's functional restrictions.

*Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017) (citations omitted); *see also* 20 C.F.R. § 416.929(c)(3); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304. However, "[t]he ALJ [is] not required to discuss methodically each *Polaski* [factor], so long as he [or she] acknowledge[s] and examine[s] those considerations before discounting [the claimant's] subjective complaints." *McDade v. Astrue*, 720 F.3d 994, 998 (8th Cir. 2013) (citation omitted). "Because the ALJ [is] in a better position to evaluate credibility, [the Court] defer[s] to his [or her] credibility determinations as long as they [are] supported by good reasons and substantial evidence." *Id.* (citation omitted).

Mr. Shanks stated that he "no longer ha[s] the movement to perform required work physical[l]y" and he is "unable to move as required" due to "to[o] much pain." (AR 229, *see* AR

16).  Although the ALJ found that Mr. Shanks's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," he also found that Mr. Shanks's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (AR 16).  The ALJ found an RFC of light work with limitations. (AR 15).

In reaching his credibility determination, the ALJ considered that during his consultative examination with Dr. John Irlam, Mr. Shanks reported functional limitations, secondary to pain, that affected his ability to sit, stand, and walk, as well as the amount of weight he could lift and carry. (AR 16, 297).  The ALJ also considered the objective medical evidence, which both supported and detracted from Mr. Shanks's reports of pain.  For instance, the ALJ noted that Dr. Irlam found that Mr. Shanks "demonstrated right shoulder, lumbar spine, and bilateral knee pain with palpation on passive range of motion." (AR 16, *see* AR 299).  Further, Mr. Shanks "was able to rise from a sitting position without assistance, but had some difficulty getting up and down from the exam table." (AR 16, *see* AR 299).  During his consultative exam, Dr. Irlam stated that "[t]here was no joint swelling, erythema, effusion, or deformity." (AR 16, *see* AR 299).  Looking specifically to Mr. Shanks's degenerative joint disease, the ALJ stated that "a March 13, 2018 x-ray of [Mr. Shanks's] left kn[ee] showed evidence of moderate degenerative joint disease which was advanced for his age with loss of joint spaces and large osteophytes." (AR 17, *see* AR 292). Approximately four months after his March 2018 x-ray, during a physical examination, Mr. Shanks "walked without a limp," his "left knee had mild effusion," and the examiner's impression was "[p]robable ACL deficient left knee." (AR 17, *see* AR 351).  When Mr. Shanks was seen approximately eight months later, on March 27, 2019, "he was wearing braces on his knees," had an antalgic gait, "but there was no mention that an assistive device was used." (AR 17, *see* 389-95).  During this visit, the doctor placed Mr. Shanks on a narcotic pain contract and ordered him to return for follow-up in three months. (AR 17, *see* AR 391).  As to Mr. Shanks's degenerative disc disease of the cervical and lumbar spine, the ALJ considered a March 6, 2019 MRI which showed evidence of moderate to severe C3-7 degenerative change. (AR 17, *see* AR 393, 395).

The ALJ also considered Mr. Shanks's reported activities of daily living as set forth in Mr. Shanks's Adult Function Report. (AR 17-18).  In that Report, Mr. Shanks stated that from the time he wakes up he does "various things in moderation (if able to)." (AR 230, *see* AR 17-18).  He also

stated that he prepares his own meals that include "simple foods that are quick that [don't] require long time standing." (AR 231, *see* AR 18). He completes his own chores but takes his "time as needed." (AR 231, *see* AR 18). These chores include mowing the lawn "in short amounts of time (15 min[utes])." (AR 231, *see* AR 18). Although Mr. Shanks reported that he no longer drives, he shops in stores for food and clothing for one to one-and-a-half hours. (AR 232, *see* AR 18). He is able to walk ten to twelve blocks or twenty minutes before needing to rest. (AR 234, *see* AR 18).

In the RFC, the ALJ limited the amount of time that Mr. Shanks could sit, stand, and walk. (AR 15). He also limited the amount of weight Mr. Shanks could lift, carry, push, or pull. (AR 15). These limitations nearly mirror the limitations Mr. Shanks reported in his consultative examination with Dr. Irlam. (*Compare* AR 15, *with* AR 297).

Based on this, it is apparent that the ALJ considered evidence that both supported and detracted from Mr. Shanks's subjective reports regarding the effects of his impairments. Although the ALJ did not discuss each of the *Polaski* factors, he was not required to do so. *McDade*, 720 F.3d at 998. The Court cannot reweigh the evidence presented to the ALJ. *See Dols*, 931 F.3d at 746 (stating that "[i]t is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo." (citations omitted)). In this case, the ALJ provided good reasons to discredit Mr. Shanks's subjective reports regarding the limiting effects of his pain. *McDade*, 720 F.3d at 998. Substantial evidence from the record as a whole supports this decision. *See id.* Therefore, the Court will affirm the ALJ's decision as to Mr. Shanks's subjective reports.

B.  *Substantial Evidence Supports the RFC*

Having affirmed the ALJ's decision regarding Mr. Shanks's subjective reports, the Court now turns to Mr. Shanks's other argument, that substantial evidence does not support the RFC. Although the ALJ discredited Mr. Shanks's subjective reports regarding the limiting effect of his impairments and choose not to give weight to the opinions of Dr. Garland Tschudin, M.D. and Dr. Irlam, the remaining evidence considered by the ALJ constitutes substantial evidence that supports the RFC. The Court will affirm on this ground as well.

The RFC is "the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 416.945(a)(1). "Medical records, physician observations, and the claimant's subjective statements about his [or her] capabilities may be used to support the RFC." *Perks*, 687 F.3d at 1092 (citation omitted). The claimant bears the burden to establish his or her RFC. *See id.* "Ultimately, the RFC determination is a medical question, that must be supported by some medical

evidence of [the claimant's] ability to function in the workplace." *Lawrence v. Saul*, 970 F.3d 989, 995 (8th Cir. 2020) (internal quotation marks and citations omitted). The RFC need not be supported "by a specific medical opinion." *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019) (citation omitted); *see Winship v. Saul*, No. 4:20-cv-00039-MDH, 2021 WL 1055196, at *5 (W.D. Mo. Mar. 19, 2021) (slip copy) (stating that "the ALJ is not required to have a medical opinion to assess the claimant's RFC." (citations omitted)). "[A]lthough medical source opinions are considered in assessing [the] RFC, the final determination of [the] RFC is left to the Commissioner." *Lawrence*, 970 F.3d at 995 (citation omitted). An ALJ's failure to connect specific medical evidence with each limitation described in the RFC, to the extent it is required, constitutes harmless error. *Earnest v. Colvin*, No. 4:14-cv-00615-NKL, 2015 WL 1964819, at *5 (W.D. Mo. Apr. 30, 2015).

The Court begins with Mr. Shanks's contention regarding the medical opinions in this case. Here, the ALJ discounted the opinions of both Drs. Tschudin and Irlam.[4] (*See* AR 18). Although Mr. Shanks concedes that the ALJ properly discounted Dr. Tschudin's opinion, in his brief, Mr. Shanks appears to argue that the ALJ should have credited Dr. Irlam's opinion. (*See* Doc. 12 at 8, 10-11). In his reply brief, Mr. Shanks clarifies that he "does not allege Dr. Irlam's opinion was discounted inappropriately," but "[r]ather, Dr. Irlam's opinion that [Mr.] Shanks could not work simply highlights the ALJ's error in developing an RFC that [Mr.] Shanks could perform a range of light work." (Doc. 18 at 4). After completing his evaluation of Mr. Shanks, Dr. Irlam opined that Mr. Shanks "is functionally disabled, which prevents activity for [his] age, training, experience and education. The expected duration is expected to last beyond [thirteen] months." (AR 299). The ALJ discounted Dr. Irlam's opinion because it was "internally inconsistent and based on an issue that is reserved to the Commissioner." (AR 18). Because Dr. Irlam opined that Mr. Shanks was disabled, which represents an issue ultimately reserved to the Commissioner, his disability opinion is "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c)(3)(i).[5] Therefore, the ALJ did not err in discounting Dr. Irlam's opinion on the issue of disability.

---

[4] The ALJ also discussed the opinion of Raphael Smith, PsyD, a state agency medical consultant. (*See* AR 18). Dr. Smith's opinion addressed Mr. Shanks's mental impairments. (*See* AR 64). Because Mr. Shanks does not address the ALJ's reliance on Dr. Smith's opinion, the Court does not address it here.

[5] The Court notes that 20 C.F.R. §§ 416.920b(c)(1) through (c)(3) apply only to claims filed on or after March 27, 2017. 20 C.F.R. § 416.920b(c). Mr. Shanks protectively filed his Title XVI claim on May 4, 2018. (AR 168). Therefore, 20 C.F.R. § 416.920b(c)(1) applies to this claim.

The Court now turns to whether substantial evidence supports the RFC. Although no specific medical opinion set forth the RFC ultimately adopted by the ALJ, substantial evidence supports the RFC. The RFC nearly mirrors the functional limitations Mr. Shanks reported during his evaluation with Dr. Irlam. (*Compare* AR 15, *with* AR 297). Further, the medical evidence in the record is sufficiently developed to allow the ALJ to make the RFC determination. *See Twyford*, 929 F.3d at 518. As shown in the written decision and as discussed above, the ALJ clearly considered the objective medical evidence, including Dr. Irlam's consultative examination, and limited Mr. Shanks to light work with restrictions on the time he could sit, stand, and walk, as well as the amount of weight he could lift, carry, push, and pull. (*See* AR 15-18). Though evidence in the record may support a more restrictive RFC, it is the role of the ALJ to weigh the evidence and a reviewing court cannot reverse simply because it may have reached a different outcome. *See Lawrence*, 970 F.3d at 996 (recognizing that the ALJ properly weighed the medical evidence in the record (citation omitted)). Further, although the ALJ did not draw a connection between the specific medical evidence and each limitation, the failure to do so, to the extent it was required, constitutes harmless error. *See Earnest*, 2015 WL 1964819, at *5. Substantial evidence from the record as a whole supports the RFC. *See Baker*, 457 F.3d at 892 (stating that a reviewing court must "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole."). The Court will affirm on this basis as well.

## V. Conclusion

For the reasons set forth herein, the Court finds the Commissioner's determination that Mr. Shanks was not disabled is supported by substantial evidence in the record. Judgment shall be entered in accordance with this Order.

Accordingly,

IT IS, THEREFORE, ORDERED that the decision of the Commissioner is affirmed.

Dated this 23rd day of May, 2021, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge